Matthew S. Warren (State Bar No. 230565)
Erika H. Warren (State Bar No. 295570)
2024-12-30@cases.warrenlex.com
WARREN KASH WARREN LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

*Attorneys for Applicant HMD Global Oy*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF HMD GLOBAL OY FOR AN ORDER UNDER 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS _____ | ) ) ) ) ) ) ) ) ) ) ) | Case No. **DECLARATION OF ANDREAS VON FALCK IN SUPPORT OF *EX PARTE* APPLICATION OF HMD GLOBAL OY FOR AN ORDER UNDER 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

- 1 -

I, Andreas von Falck, with my professional address at Dreischeibenhaus 1, 40211 Düsseldorf, Germany declare under 28 U.S.C. § 1746 as follows:

**Personal Background:**

1.    I am a *Rechtsanwalt* (German lawyer) as well as a *Registered Representative before the Unified Patent Court*, and a Partner at Hogan Lovells International LLP. I studied law between 1988 and 1992 at the universities of Tübingen, Germany; Geneva, Switzerland; and Freiburg, Germany. I graduated from Freiburg University in 1993 (*1. Staatsexamen*, "first state exam"). Between 1993 and 1995 I was a legal trainee (*Rechtsreferendar*) at the Court of Appeal, Düsseldorf, Germany. As part of my traineeship I clerked with the Patent Division of the Düsseldorf District Court (*Landgericht Düsseldorf*) under Peter Meier-Beck who later became the presiding Judge of the Patent Senate of the German Federal Court of Justice (retired in 2019). In May 1995 I was admitted to the practice of law in Germany at the District Court of Düsseldorf. I hold a PhD in law from the University of Freiburg (1997) with a thesis on international civil procedural law.

2.    I have been involved in patent infringement and validity proceedings since I started practicing law and have handled matters in all fields of technology and science, with a particular focus on matters in the fields of telecommunication and life sciences. My contribution to the field is recognized by various first tier rankings for patent litigation in Chambers (Germany, Europe and Global), Legal 500 and other directories. I am the Editor in Chief of the Chambers Global Patent Litigation Guide and have published extensively in the field, more recently in the *Festschrift* for Peter Meier-Beck, in the *Oxford Press* Commentary on the UPC, the *Festschrift* for 80 Years of the Dusseldorf Court of Appeal, as well as in the *Festschrift* for Thomas Kühnen, the recently retired presiding Judge at the Dusseldorf Court of Appeal's Patent Senate.

3.    I have experience as a German lawyer with proceedings under 28 USC Sec. 1782 for discovery in support of foreign proceedings.

4.    I have been instructed by Warren Kash Warren LLP to make this statement on behalf of HMD Global Oy (hereinafter: "HMD"). I am authorized to make this statement and any and all observations in this statement are based on my own experience and observations unless explicitly stated otherwise.

**A.**

**The German patent infringement proceedings initiated by Huawei against HMD**

5.      On November 3, 2022, Huawei Technologies Co. Ltd (hereinafter "Huawei") filed three patent infringement lawsuits against HMD Global Oy in the Munich District Court (*Landgericht München*, the "Complaints"). The Complaints have docket numbers

| |
|---|
| 21 O 13091/22 (matter I, European Patent 3 573 392 B1 = EP 392), |
| 21 O 13092/22 (matter II, European Patent 2 528 366 B1 = EP 366) |
| 21 O 14266/22 (matter III, European Patent 3 407 519 B1 = EP 519). |

6.      The Complaints are being handled by the one of the three patent divisions in the Munich District Court, the 21st division under presiding Judge Dr. Georg Werner.

7.      Two of the three Complaints (matters I and III, concerning the EP392 and EP519 patents) were dismissed at first instance by judgements dated 20 September 2024 (EP519) and 2 October 2024 (EP392) for non-infringement. Huawei has appealed against these two decisions and the appeals are pending. The docket numbers at the Appeal Court are

| |
|---|
| 6 U 3537/24 Kart e (matter I) and |
| 6 U 3511/24 Kart e (matter III). |

8.      Although the matter is before a court of appeal, new evidence can be presented and will be taken into account by the court of appeal, especially if it is evidence that was not previously available at first instance. The prerequisite is that this evidence fall into one or more of these categories:

1)   concerns an aspect that was clearly overlooked or deemed irrelevant by the court of first instance,
2)   was not asserted due to a procedural defect at first instance, or
3)   was not asserted at first instance without this being due to negligence on the part of the party.

As far as alternative 3 is concerned, a party acts negligently if it fails to adduce factual circumstances whose relevance to the proceedings it is aware of or ought to have been aware of had it taken due care, and which it would have been able to adduce at first instance. However, in this context, there is no obligation at first instance to investigate unknown facts. Hence, if the party was not aware of the evidence in question at first instance, said evidence can be introduced at the appeal stage and considered by the court of appeal if the party obtains the relevant evidence during the appeal proceedings.

9.      The third case (matter II) is still pending at first instance.

10.     In matter II, the EP 366 proceedings, Huawei takes the position that the Patent-in-Suit is essential for the 4G standard (from Release 8) and argues that HMD infringes the Patent-in-Suit by selling mobile devices that are **4G-capable**.

11.     In matter I, the EP 392 proceedings and matter III, the EP 519 proceedings, Huawei takes the position that the respective Patents-in-Suit are essential for the 5G standard (from Release 15) and believes that HMD infringes the Patents-in-Suit by selling mobile devices that are **5G-capable**.

12.     Because infringement and validity are handled by different courts in Germany, HMD has filed nullity actions in the Federal Patent Court against all three Patents-in-Suit, and the docket numbers for these parallel nullity proceedings are as follows:

| Patent in suit | First instance nullity proceedings (Federal Patent Court ) |
|---|---|
| EP 2 528 366 B1 | 4 Ni 23/23 |
| EP 3 573 392 B1 | 4 Ni 27/23 |
| EP 3 407 519 B1 | 4 Ni 16/23 |

**B.**
**HMD's Non-Technical Defenses in Relation to Huawei's Licenses to Qualcomm**

13.     Against all three patents asserted by Huawei, HMD asserts both technical defenses relating to non-infringement and nullity, and non-technical defenses relating to other matters.

14.     As part of its non-technical defenses, HMD asserts an exhaustion defense and a FRAND defense. Huawei's relationship with Qualcomm plays a central role in that defense. In particular, license agreements between Huawei and Qualcomm could also result in exhaustion that could lead to the partial or complete dismissal of the claims asserted by Huawei. If Huawei has granted Qualcomm license rights, and those rights also work in favor of HMD, these rights may oppose the claims asserted by Huawei in the above-mentioned patent infringement proceedings, so that the Complaints could be dismissed on that basis alone to the extent exhaustion applies.

15.     Exhaustion must be taken into account by infringement courts. In evaluating the possibility of exhaustion, it should be noted that, according to the case law of the German Federal Court of Justice, not

only license agreements are relevant to the question, but all agreements by virtue of which the beneficiary may rely on not being held liable for patent infringement by the patent holder may be relevant (Federal Court of Justice judgement of 24 January 2023, X ZR 123/20 – CQI-Bericht II). This therefore also applies, for example, to agreements on so-called "covenants not to sue" or "covenants to be sued last". Exhaustion therefore depends not just on explicit license grants but can be based on any agreement between Huawei and Qualcomm granting rights, privileges or any kind of benefits under Huawei's patent rights in favor of Qualcomm.

16.    The 5G mobile devices distributed by HMD are mostly equipped with Qualcomm chipsets. If the exhaustion defense were therefore to apply, the infringement claims brought by Huawei based on EP 392 and EP 519 would have to be dismissed insofar as 5G mobile devices equipped with Qualcomm chipsets are attacked with these Complaints. The Complaint based on EP 366 is directed against 4G mobile devices from HMD, which are partly equipped with Qualcomm chipsets and partly with chipsets from other chip suppliers. Also in this case, the exhaustion defense could lead to those products with Qualcomm chipsets being excluded from any judgment against HMD.

17.    A recent decision of the Unified Patent Court (UPC), directly addressing claims of exhaustion regarding Huawei agreements with Qualcomm, shows the importance of this issue and its relevance to Huawei's infringement claims against HMD. On December 18, 2024, the Munich Local Division of the UPC issued a judgment in a legal dispute between Huawei and Netgear (UPC_CFI_9/2023). Huawei had asserted a WiFi6 SEP and directed the Complaint against access points/routers marketed by Netgear. The court found patent infringement and awarded Huawei the asserted claims. However, the court ruled that the judgment was not directed against Netgear products equipped with Qualcomm chipsets because exhaustion had occurred with regard to these products. The exhaustion resulted from a license agreement between Qualcomm and Huawei, which is referred to in the ruling as "QC 2020 PLA". It can also be seen from the ruling that this license agreement covers the period from 1 January 2020 to 31 December 2024. This suggests that Huawei has granted far-reaching rights in favor of Qualcomm with this agreement, which – as the UPC has confirmed – may lead to exhaustion facts on which Qualcomm customers (such as HMD) can rely.

18.    In addition to the exhaustion defense, HMD also asserts a FRAND defense. HMD's FRAND defense will be assessed according to the factors developed by the European Court of Justice in the landmark decision Huawei v. ZTE. This decision imposes certain obligations on the SEP holder, which he must fulfill in order to ensure that the judicial enforcement of the claims for injunction, recall and destruction does not constitute a prohibited abuse of a dominant position under Article 102 TFEU (Treaty on the Functioning of the European Union). The main obligation of the SEP holder is to offer to the implementer a license on

FRAND terms, i.e. to make a so-called "FRAND offer". The FRAND offer must be Fair, Reasonable And Non-Discriminatory, and thus FRAND.

19.     HMD's FRAND defense is based in part on the argument that Huawei is "double dipping" under applicable antitrust law.  It would constitute "double dipping" in violation of antitrust law if Huawei had already granted rights to the patents at issue at the supplier level – i.e. to Qualcomm – which also work in favor of HMD, but Huawei nevertheless tried to obtain royalties from HMD for these rights again and used the infringement claims (in particular the claim for injunctive relief) as a means of exerting pressure to enforce these then unjustified royalty demands. An offer that would lead to "double dipping" if accepted cannot be considered FRAND, which means that the SEP holder would not have fulfilled his primary obligation under the landmark decision Huawei v. ZTE, because he failed to offer the implementer a license on FRAND terms, i.e. a "FRAND offer". Accordingly, if the court were to assess the Complaint as contrary to antitrust law and would accept the FRAND defense in view of the "double dipping" contrary to antitrust law, this could lead to the dismissal of the Complaint or at least to a dismissal of Huawei's claims for injunctive relief, recall and destruction.

20.     HMD thus raises two defenses for which Huawei's agreements with Qualcomm are relevant:  A successful exhaustion defense would lead to a full dismissal of Huawei's claims with regard to any devices that are equipped with Qualcomm chipsets. A successful FRAND defense against Huawei's actions would lead to a dismissal of at least Huawei's claims for injunctive relief, recall and destruction.

**C.**

**HMD's Attempts to Obtain Huawei's Agreements with Qualcomm**

21.     HMD had already asked Huawei to disclose the existing agreements with Qualcomm at the beginning of the license negotiations – in early 2019, i.e. long before the above-mentioned infringement claims were filed – in order to determine whether and, if so, the extent to which HMD still requires licenses from Huawei and the extent to which pass-through rights already apply under the agreements between Huawei and Qualcomm. HMD has repeatedly addressed this issue over the years, but Huawei has largely rejected disclosure, and has suggested that HMD obtain any documents in question directly from Qualcomm.

22.     With its non-technical rejoinder briefs in the aforementioned infringement proceedings (filed on 6 November 2023 in the EP 366 proceedings, on 22 November 2023 in the EP 392 proceedings and on 29 November 2023 in the EP 519 proceedings) HMD applied for a production order requiring Huawei to disclose all agreements concluded with Qualcomm.

23.     This request finds its legal basis in Section 142 German Civil Code Of Procedure, paragraph 1 of which reads:

> **Section 142**
>
> **Order to produce records or documents**
>
> *(1) The court may direct one of the parties or a third party to produce records or documents, as well as any other material, that are in its possession and to which one of the parties has made reference. The court may set a deadline in this regard and may direct that the material so produced remain with the court registry for a period to be determined by the court.*

24.     "May" in this context means that the issuance of a production order is at the discretion of the court. The court can decide on a corresponding request by order.

25.     In the EP 366 proceedings, Huawei filed an application for a production order against itself (directed at the disclosure of "cherry picked" agreements Huawei had concluded with other parties). This request by Huawei against itself was also based on Section 142 German Civil Code Of Procedure. The Munich District Court exercised its discretion in this context to grant Huawei's "request against itself" and issued a corresponding production order. However, HMD's requests based on Section 142 German Civil Code Of Procedure for disclosure of the contracts that Huawei has concluded with Qualcomm was not granted. The court has not given a reason for this.

26.     German procedural law does not provide for any further discovery options.

27.     Accordingly, the content of the agreements between Huawei and Qualcomm is still largely unknown to HMD and also to the Munich District Court and the Munich Higher Regional Court (*Oberlandesgericht München*). The information received by HMD so far does not allow a conclusive assessment of the central question of the extent to which Qualcomm was granted which rights and to which extent HMD can derive "pass-through rights" from Qualcomm which would ultimately lead to exhaustion of the claims asserted by Huawei in the pending infringement proceedings.

28.     Any information on the agreements between Huawei and Qualcomm that was made available in context of the infringement proceedings so far are the subject of a court confidentiality order, which prohibits the use of the documents/information outside the infringement proceedings and threatens a fine of up to EUR 100,000 or imprisonment for up to six months for each culpable breach of the confidentiality obligation.

29.     To date, Huawei has persistently refused to make any further disclosures.  In fact, during the oral arguments in the infringement proceedings mentioned above, Huawei's German counsel pointed out that HMD could obtain the agreements between Huawei and Qualcomm by filing a request under U.S.C. § 1782.

30.     As explained above, HMD's request based on Section 142 German Civil Code Of Procedure for disclosure of the contracts that Huawei has concluded with Qualcomm was not granted. However, if HMD were to introduce these agreements into the proceedings, based on my years of experience, I am confident that the court would take them into account and consider said agreements as evidence to decide on the exhaustion defense.  In my experience, in actions where the 1782 action has yielded documents and a party has submitted those documents to the German Court, the German Court has considered the documents in making its decision.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 30, 2024, in Düsseldorf, Germany.

_____
Andreas von Falck